IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACY A. CRAFT,

        Plaintiff,

                                      3:14-CV-00592-PK

v.                                         OPINION AND ORDER

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Tracy A. Craft filed this action on April 9, 2014, seeking judicial review of the Commissioner of Social Security's final decision denying his applications for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and IVX of the Social Security Act (the "Act"). This court has jurisdiction over Craft's action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

Craft argues the Administrative Law Judge improperly determined Craft can perform semi-skilled work without identifying any transferable skills which Craft has, and improperly failed to address a supposed conflict between vocational expert testimony and the Dictionary of Occupational Titles. I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, I affirm the Commissioner's decision.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant seeking DIB under Title II must also establish disability on or prior to the last date insured. 42 U.S.C. §§ 416(i)2(c); 416(i)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (*citing Bowen*, 482 U.S. at 153-54). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.* (*quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985)).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* S.S.R. No. 96-8p, 61 Fed. Reg. 34474 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of

---

[1] Social Security Regulations ("S.S.R.") explain: "[a] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 61 Fed. Reg. 34474 (July 2, 1996).

Page 4 - OPINION AND ORDER

jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (*citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The court may not substitute its judgment for that of the Commissioner. *See id.* (*citing Robbins*, 466 F.3d at 882); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).

## BACKGROUND

Craft was born on October 18, 1961. See, e.g. Tr. 166, 180. Craft reports completing 9th grade and being expelled from high school for hitting his vice principal. Tr. 247-48, 250.

Craft's first objective medical and educational records are from 2007 to 2009, at which time Craft was incarcerated. 173-83, 242-48. Ann Heyen, Ph.D., a licensed psychologist, administered the Wechsler Abbreviated Scale of Intelligence on June 26, 2007, and Craft scored a full scale IQ of 98, a verbal IQ of 87, and a performance IQ of 109. Tr. 245-46. On June 27th, 2007 Craft was evaluated by David Haven, Psy.D., who recorded Craft denied depression, anxiety, sleep/appetite disturbance, and prior mental health treatment. Tr. 243-44. At this appointment Craft reported using methamphetamine "more days than not" in the previous year. *Id.* Craft's educational records from prison reflect that between his intake date in June 2007 and January 2008 Craft took multiple reading and math evaluations and a practice GED. Tr. 183. Craft was evaluated for eligibility for special education, and on May 27, 2008, was found eligible for an educational accommodation plan. Tr. 173-81. In August 2009 Craft was evaluated by Dr. Rich Gorringe, Ph.D., who noted Craft was not clinically depressed, and recorded Craft "appear[ed] to be drug-seeking." Tr. 242.

On June 23, 2010, Craft applied for SSI and DIB, alleging a disability onset date of June 9, 2009. Tr. 138-57. The record contains a July 10, 2010, letter from the Oregon Department of Justice noting Craft had an existing order to pay child support. Tr. 158. A disability field report dated July 8, 2010, records that Craft presented appearing to be in pain and stating he had a headache. Tr. 185. The interviewer found him to have a "fairly poor memory" and noted he had difficulty concentrating on the conversation. Tr. 185.

Craft's mother submitted a third party report in which she indicated Craft has cluster headaches which began when he was eight or nine or ten, and reported taking Craft to OHSU

where he was diagnosed with "cluster headaches" and severe dyslexia by Eugene Uphoff, M.D. Tr. 203; *see also* Tr. 41. The record does not include any medical records from this reported medical visit. The record shows Portland Family Practice received, on November 23, 2010, a request for medical records for Tracy Craft and hand-wrote "Not our patient" on the request. Tr. 283. Craft's mother indicated she does not live with Craft, and her knowledge of his current condition was based on phone conversations with Craft. Tr. 283. She described his headaches as having increased in frequency to "almost daily" and as being of such severity that Craft is unable to read or see during a headache. Tr. 283.

Craft's own description of his abilities notes back pain and headaches that substantially limit him, such that he eats simple meals only, does not drive, has no active hobbies, and typically goes outside once or twice a day "for a short period." Tr. 205-12. Craft lists three previous jobs: mechanic, construction worker, and dishwasher. Tr. 213-25.

Amanda Ragonesi, Psy.D., evaluated Craft at the request of the Division of Disability Determination Services office on September 21, 2010. Tr. 249. No treatment records were available for her review. *Id.* Dr. Ragonesi administered a Wechsler Memory Scale, 4th edition (WMS-IV) on which all of Mr. Craft's index scores were in the average range. *Id.* Dr. Ragonesi concluded that "Mr. Craft does not meet diagnostic criteria for a mental health diagnosis" but did recommend a physical examination to rule out physical problems. *Id.*

Craft was evaluated by Zoe Carlson, ARNP, on November 2, 2010. Tr. 280-82; 360-62. Ms. Carlson's assessment was "likely migrainous headaches. Treat with Imitrex, may benefit from prophylactic [i.e.,] inderal. No functional disability noted." Tr. 282.

Craft was evaluated by Maria Malcolm, Ph.D., at the request of the Washington State Department of Health Services beginning in December 2010. Tr. 363-82. Dr. Malcolm

administered the Weschler Adult Intelligence Test-Fourth Edition (WAIS-IV) on December 9, 2010, and recorded the following scores: FSIQ: 72; Verbal Comprehension: 76; Perceptual Reasoning: 82; Working Memory: 80; Processing Speed: 65. Tr. 373. Dr. Malcolm noted that these scores indicate Craft has borderline intellectual functioning and that sheltered employment may be appropriate. Tr. 374. Dr. Malcolm's clinical interview included Craft's report that he had been expelled from high school in tenth grade after hitting the vice principal. Tr. 367.

On December 30, 2010 Dr. Malcolm conducted an additional psychological evaluation of Craft, and administered the Minnesota Multiphasic Personality Inventory-Second Edition (MMPI-2). Tr. 368. In addition to borderline intellectual functioning, Dr. Malcolm found Craft had "Mood Disorder, NOS (296.90)" and "antisocial traits." However, Dr. Malcolm's medical opinion from this interview is truncated; at least one page of Dr. Malcolm's discussion and conclusions is missing from the record, and it is unclear to what extent Dr. Malcolm considered these to be diagnosed medical conditions affecting Craft's employability, although Dr. Malcolm did note "sheltered employment may be appropriate." *See* Tr. 368-69.

The opinions of Dr. Malcolm were made part of the record after the ALJ's decision. Tr. 5. As a result, Dr. Malcolm's opinions were first considered when the Appeals Council reviewed whether, with the addition of these incomplete records, the weight of the evidence was contrary to the ALJ's decision. Tr. 2. Since Dr. Malcolm's opinion was considered by the Appeals Council and made part of the administrative record, it is part of the record as a whole which this court must consider in evaluating whether the ALJ's decision was based upon substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159 (9th Cir. 2012).

In December 2011, Craft presented with back pain at the Emergency Department of Adventist Health. Tr. 292-94. The records indicate Craft did not report headaches at this visit. *Id.* Craft was discharged with prescriptions for flexeril, norco, and ibuprofen. *Id.* 294.

In December 2011 and January 2012, Craft was treated by Joseph Eisenberg, M.D., for migraines and for back pain he'd reportedly experienced for over fifteen years, which had worsened in the past five years. Tr. 289-91, 295, 330-37. Dr. Eisenberg had records from Craft's November 2010 evaluation by Nurse Carlson, and noted that Craft had not raised any back pain concerns at that evaluation. Tr. 334. Dr. Eisenberg took x-rays of Craft's back and neck, and diagnosed arthritic changes and cervical spondylosis. Tr. 295. Dr. Eisenberg prescribed medication for back pain and migraines, referred Craft for physical therapy, and advised Craft to stop smoking. Tr. 289-92. Dr. Eisenberg's notes reflect that Craft "wants opiates." Tr. 330.

Craft attended four physical therapy appointments over eight weeks in January and February of 2012. Tr. 296-320. His therapist's impressions were: "[Craft] has made slow progress in PT with chronic cervical and lumbar pain. He continues to experience chronic spinal pain with intermittent L > R LE symptoms and antalgic gait. [Craft] continues to demonstrate limited AROM cervical (B) rotation." Tr. 318. In February Craft was discharged to continue a home program of physical therapy. *Id.*

On March 23, 2012, Craft was treated by Deane DeFontes, M.D. Craft explained to Dr. DeFontes that he was switching to Dr. DeFontes from Dr. Eisenberg because Craft lived closer to Dr. DeFontes' office and Craft had experienced "some clashes" with his PCP at his previous clinic. Tr. 329. Dr. DeFontes notes Craft became "frustrated by perceived lack of response to his discomfort as well as limited evaluation to assess severity of his [symptoms]" and asked for

Page 9 - OPINION AND ORDER

"something" to relieve his pain. Tr. 329. Dr. DeFontes also describes Craft as exhibiting "Marked overlay, melodrama about his [symptoms]." Tr. 329.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Craft did not engage in substantial gainful activity at any time following his claimed disability onset date of June 9, 2009. Tr. 19. He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Craft's medical impairments of "degenerative disc disease of the lumbar and cervical spine and headaches" were "severe" for purposes of the Act, and so the ALJ proceeded to the third step of the analysis. Tr. 19.

At the third step, the ALJ found that none of Craft's impairments were the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 19-20. The ALJ then conducted an assessment of Craft's residual functional capacity, concluding:

> Claimant has the the residual functional capacity to perform light work as defined by 404.1567(b) and 416.967(b); however his postural activities are limited to no more than occasional climbing, stooping, crouching, crawling and kneeling. He should avoid heights and hazards and should have no more than occasional interaction with the public. He is limited to unskilled and semi-skilled work.

Tr. 20.

At the fourth step of the five-step process, the ALJ found that Craft was unable to perform his past relevant work. Tr. 22.

At the fifth step, the ALJ found in light of Craft's age, education, work experience, and RFC that there were jobs existing in significant numbers in the national and local economy that he could perform. Tr. 23. The ALJ noted that if Craft could perform the full range of light work,

Page 10 - OPINION AND ORDER

then Medical-Vocational rule 202.18 and 202.11 would direct the ALJ to find Craft is not disabled. Tr. 23. Since Craft's ability to perform the requirements of this range of work is impeded by additional limitations, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with claimant's residual functional capacity, age, education and work experience. Tr. 53. On the basis of testimony from the vocational expert indicating such an individual could perform the requirements of occupations such as electrical parts assembler and wire harness assembler, the ALJ concluded that Craft was not disabled. Tr. 23.

On February 3, 2014, the Appeals Council denied Craft's request for review of the ALJ's decision, finding that even with the addition of the records from Dr. Malcolm, the ALJ's decision was not contrary to the weight of all the evidence in the record. Tr. 1.

## ANALYSIS

Craft challenges the Commissioner's determination that he is not disabled. Specifically, Craft argues that the Administrative Law Judge (1) improperly determined Craft can perform semi-skilled work without identifying any transferable skills which Craft has, and (2) improperly failed to address a supposed conflict between vocational expert testimony and the Dictionary of Occupational Titles (D.O.T.).

### I. The ALJ did not err by finding Craft can perform semi-skilled work without finding Craft has transferable skills.

To argue the ALJ erred by finding Craft can perform semi-skilled work without also finding Craft has transferable skills, Craft seeks to apply *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009). The *Bray* court held that where an ALJ assumes the claimant has transferable skills from a previous position, but the ALJ fails to articulate a clear basis to support that assumption, then reviewing courts are unable to determine whether substantial evidence supports the ALJ's decision, and remand is necessary. *Id.*, at 1229; *see also* S.S.R. 82-41 ("When

the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision.").

Craft does not point to any instance in the record where the ALJ or VE infer Craft has transferable skills from a previous position. The record contains no such instance, and the ALJ expressly found "[t]ransferability of job skills is not material to [Craft's] determination of disability." Tr. 22. Instead, Craft contends the ALJ's determination that Craft is able to perform semi-skilled work implicitly requires a determination that Craft has transferable skills.

Craft nowhere cites to a definition of "transferable skills" or "semi-skilled" work to support his contention that semi-skilled work can only be performed by someone with transferable skills. Craft instead styles his argument as relying upon on "axiomatic logic," which may be because no support exists. The regulations explaining these terms for social security determinations read as follows:

> (b) Semi-skilled work. Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.
> * * *
> (d) Skills that can be used in other work (transferability)—(1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

Page 12 - OPINION AND ORDER

20 C.F.R. §§ 404.1568; 416.968. There is no implication that a claimant can only be found able to perform semi-skilled work if the claimant has transferable skills from a previous position. Further, S.S.R. 82-41 explicitly distinguishes worker aptitudes and abilities from acquired work skills: "[A]lertness and close attention . . . coordination and dexterity . . . these terms . . . describe worker traits (aptitudes or abilities) rather than acquired work skills." S.S.R. 82-41 goes on to discuss how some kinds of semi-skilled work will not result in a person acquiring transferable skills:

> At the lower level of semiskilled work (next to unskilled) are jobs like those of a chauffeur and some sewing-machine operators. Also at the lower level of semiskilled work would be such jobs as room service waiter, in which the worker serves meals to guests in their rooms, taking silverware, linen, plates and food on a tray or cart and then removing the equipment from rooms after guests have eaten. Transferability of skills is not usually found from this rather simple type of work. When job activities are at this minimal level of skill, an adjudicator or administrative law judge (ALJ) can often, without assistance, make the determination that the worker has very little vocational advantage over an unskilled person and does not have transferable skills.

If an ALJ can be justified "without assistance" in finding that a person who has held a specific semi-skilled position, such as room service waiter or chauffer, does not have transferable skills, then at least some semi-skilled positions, such as room service waiter and chauffer, do not require transferable skills from previous employment. I conclude Craft's contention is without merit.

The ALJ's determination that transferable skills are not material to this determination is supported by substantial evidence and will not be disturbed by this Court. Because I find transferability of job skills did not factor into the ALJ's decision, *Bray* does not apply. 554 F.3d 1219 (9th Cir. 2009).

Page 13 - OPINION AND ORDER

## II. The ALJ did not err by failing to address conflicts between the vocational expert's testimony and the D.O.T.

Craft also seeks to apply the holding from *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007). In *Massachi*, the Ninth Circuit held that, in light of S.S.R. 00-4P, an ALJ errs in relying on testimony from a vocational expert (VE) if the ALJ does not (1) inquire if the vocational expert's testimony conflicts with information in the Dictionary of Occupational Titles; and (2) to the extent a conflict is apparent, if the ALJ does not then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the D.O.T. *Id.* 1152-54; *see also* S.S.R. 00-4P.

Craft does not contend the ALJ erred by relying on VE testimony while failing to inquire if the VE's testimony conflicted with the D.O.T. The record shows the ALJ inquired whether the VE's testimony was consistent with the D.O.T., and the VE testified it was. Tr. 54. Thus, the ALJ met the first requirement of *Massachi*.

Craft instead contends the ALJ erred by failing to resolve a supposed conflict between the VE's testimony and the D.O.T. Craft contends the VE contradicted the D.O.T. by stating Craft could perform positions the D.O.T. regards as semi-skilled even though the ALJ did not find Craft had any transferable skills. As noted above, a semi-skilled position is not necessarily a position for which a person would need to have transferable skills from a prior position. Craft's argument that a person must have transferable skills to be able to perform semi-skilled work is without merit.

With regard to the specific positions the VE found Craft can perform, there is no indication that either the VE or the D.O.T. would find these positions require transferable skills. The VE expert cited D.O.T. numbers for the two positions, and noted each position is described by the D.O.T. as semi-skilled, light work with a specific vocational preparation (SVP) of 3,

Page 14 - OPINION AND ORDER

meaning it would usually take one to three months to train someone to do these jobs. Tr. 53. In summary, there is no appearance at all of conflict between the VE's testimony and the D.O.T. Since there was no appearance of conflict with the D.O.T., the ALJ cannot have erred by failing to reconcile an apparent conflict. Thus, I conclude the ALJ met the requirements of *Massachi*.

Craft raises no further arguments, and I decline to evaluate arguments not raised. *See Edlund v. Massanari*, 253 F.3d 1152, 1158 n.7, 1160 n.9 (9th Cir.2001); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997).

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Craft's application for disability insurance benefits is affirmed. A final judgment shall be prepared.

Dated this 6th day of August, 2015.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge